# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BRETT KURPIEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 08-CV-3155 |
| | ) | |
| CALUMET RIVER FLEETING, | ) | District Judge Robert M. Dow, Jr. |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Brett Kurpiel filed his complaint against Defendant Calumet River Fleeting, Inc. ("Calumet"), seeking damages for injuries he allegedly sustained during his employment with Calumet. Kurpiel brings his claim pursuant to the Jones Act, 46 U.S.C. § 688, alleging that his injuries resulted from Calumet's negligence and the unseaworthiness of the vessel. On June 17, 2009, Defendant Calumet moved for summary judgment [26]. For the following reasons, the Court grants Defendant's motion for summary judgment.

**I.    Background**

**A.    Factual History**

Defendant Calumet hired Plaintiff Brett Kurpiel as a deckhand aboard the *John M. Selvick* in May or June 2007. As a deckhand, Kurpiel's duties included keeping decks clear, tying off barges, facing up to barges, properly stowing equipment, and basic vessel maintenance. Before being allowed to work on his own, Kurpiel participated in a training period of three weeks with a more experienced deckhand. Following the training period, Kurpiel was allowed to work alone as a deckhand aboard Calumet's vessels.

1

On December 4 and 5, 2007, the *John M. Selvick* had a crew of four – Captain Eric May, Engineer Steve Hoeckendorff, Deckhand Brett Kurpiel, and Deckhand Mike Szukrewicz. The voyage that day was to travel to a port in Milwaukee, Wisconsin, pick-up two barges, and tow them back to Chicago. However, severe weather conditions forced the *John M. Selvick* to find safe harbor and dock for the night instead of returning to Chicago. In his deposition, Kurpiel described the weather conditions as changing from rain to snow, then to ice, and finally to a near blizzard.

During the early morning hours of December 5, while in "safe harbor" and while working the midnight to 6:00 a.m. shift, Kurpiel went to the wheelhouse to use his cell phone. According to his deposition testimony, he fell asleep in the wheelhouse while waiting for the cell phone call and watching the barges. When he woke up, between 4:00 a.m. and 4:30 a.m., he needed to use the bathroom and wanted to check the decks. As he was walking back down the steps leading to the wheelhouse, he slipped on the last stair and fractured his left ankle.

In a statement that he signed on March 1, 2008, Kurpiel stated that he did not know if he slipped or just turned his ankle. He also stated that there were rails on both sides of the steps, that all six steps had non-skid paint on them, that the area was well lit, and that the wheelhouse stairs had been salted and taken care of by the other deckhand during the earlier shift. According to Kurpiel, the deckhands were responsible for salting the deck and stairs and keeping them clear of snow and ice. On board the vessel, the crew had shovels, sledgehammers, and salt available to remove any snow accumulations. According to the statement, Kurpiel said that shortly after his fall, the crew checked the stairs and surrounding area and that both "were still okay from the salting." He also stated, "This was a freak accident that I do not think could have been avoided. There was nothing that could have been done that had not been done."

Conversely, during his deposition, Kurpiel claimed that the stairs had not been shoveled or salted. However, he confirmed that it was the responsibility of the deckhand to shovel and salt the deck and stairs, that it was four hours into his shift (during which he would have been the deckhand responsible for shoveling and salting the deck and stairs) when he fell on the stairs, and that he had been asleep in the wheelhouse during his shift.

Although a specific rule or regulation regarding the use and upkeep of non-skid paint or tape on vessels does not exist, Defendant Calumet applies non-skid paint to the surfaces of its vessels on an "as needed" basis. On March 21, 2007, the *John M. Selvick* was inspected and the condition of the non-skid paint was deemed unsatisfactory, so Calumet applied non-skid paint to the vessel. On July 11, 2007, and again on May 7, 2008, the condition of the non-skid paint on the *John M. Selvick* was deemed satisfactory.

"Ice creepers" are gear that crew members can put on their boots to aid them in working in ice and snow. During his deposition, Kurpiel testified that the captain mentioned to him that ice creepers were available to crew members, but that none were ever issued to Kurpiel. Two other crew members confirmed that ice creepers were aboard the vessel at the time of Kurpiel's accident, but that, like other personal protective equipment such as work vests, everyone shares them and retrieves them when necessary.

B. **Procedural History**

Following full briefing on Defendant Calumet's motion for summary judgment, Plaintiff was given leave to correct violations of Local Rule 56.1(b) for failing to respond to Calumet's statement of material facts. Because Plaintiff raised new matters in his response to Defendant's statement of facts and in his own Rule 56.1 statement, the Court gave Defendant leave to file a reply brief to address the new facts and issued raised by Plaintiff's revisions.

## II. Analysis

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

Congress enacted the Jones Act, 46 U.S.C.§ 688, to create a federal negligence claim for seamen injured in the course of employment as a result of the negligence of a shipowner. The

Jones Act provides this heightened legal protection to eligible seamen because of their exposure to "the perils of the sea" in the course of their duties. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995). The Act by its terms extends the protections of the Federal Employer's Liability Act ("FELA") to seamen, and thus FELA caselaw is broadly applicable in the Jones Act context. See *Sobieski v. Ispat Island, Inc*., 413 F.3d 628, 631 (7th Cir. 2005).

To maintain a cause of action under the Jones Act, a plaintiff must prove that the shipowner was negligent and that such negligence was the proximate cause of the plaintiff's injury. See *Gautreaux v. Scurlock Marine, Inc*., 107 F.3d 331 (5th Cir. 1997). What constitutes negligence under the Jones Act is determined by principles of common law. *Sobieski*, 413 F.3d at 631. A shipowner is not an absolute insurer; rather, a seaman must show that the shipowner breached its duty to provide a seaworthy vessel. As the Seventh Circuit has stated, "plaintiffs seek a rule that would in essence make Jones Act employers the absolute insurers of seamen they employ, regardless of the underlying theory of liability. Binding precedent makes clear, however, that neither FELA nor the Jones Act has such a broad sweep." *Id*.; see also *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994) ("FELA does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur."); *Hernandez v. Trawler Miss Vertie Mae, Inc*., 187 F.3d 432, 436-37 (4th Cir. 1999) ("[T]he Supreme Court has cautioned that the FELA, and derivatively the Jones Act, is not to be interpreted as a workers' compensation statute and that the unmodified negligence principles are to be applied as informed by the common law."). While the Court is cognizant of case law suggesting a lighter burden to be carried by Jones Act plaintiffs in surviving summary judgment (see, *e.g*., *Leonard v. Exxon Corp*., 581 F.2d 522, 524

(5th Cir. 1978)), the statute does not dictate that a plaintiff is entitled to skip the summary judgment mechanism altogether. See *Sobieski*, 413 F.3d at 636-37.

In his signed post-accident statement, Kurpiel admitted that (i) all six steps had non-skid paint on them, (ii) the area was well lit, (iii) the wheelhouse stairs had been salted and taken care of by the other deckhand during his shift (as it was the deckhand's responsibility to salt the deck and stairs and keep them clear of snow and ice), (iv) the crew checked the stairs and surrounding area post-accident and that both "were still okay from the salting," and (v) his fall was a "freak accident that I do not think could have been avoided." In this statement, he never mentioned ice creepers (or "ice grippers"). Then, in his deposition, Kurpiel admitted that the captain had told him about the ice creepers but never issued him a pair. Now, in an affidavit submitted after his deposition and after the initial briefing was completed in this case, Kurpiel claims that he was unaware of any ice creepers on board the ship, and that this fact alone raises a question of fact as to Defendant's liability in this matter for failing to "provide Plaintiff with the necessary equipment to deal with the unreasonably slippery condition on the steps." Plaintiff provides no other argument, save this one contention, in opposition to Defendant's motion for summary judgment.

To the extent that a party's statements in an affidavit contradict his deposition testimony, the Court will not consider the affidavit in ruling on the summary judgment motions. See *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996) ("As a general rule, the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony"); see also *Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 720 (7th Cir. 1998). Kurpiel's post-briefing, post-deposition affidavit claiming that he was unaware of any ice creepers on board the ship,

6

despite his prior deposition testimony that the captain told him about the ice creepers, is precisely the type of self-serving affidavit that the rule against sham affidavits forbids. See *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993) (finding that "[s]elf-serving affidavits without factual support in the record will not defeat a motion for summary judgment"). Moreover, consistent with Kurpiel's deposition testimony, both the captain and engineer of the *John M. Selvick* testified that ice creepers were available for use (on the date of Kurpiel's accident) if crewmembers had deemed such use to be necessary under the circumstances. To now claim that he never was aware of the fact that these devices were on the vessel belies his signed, post-accident statement, his own deposition testimony, and the other evidence in the record.

Even if this court were to consider Kurpiel's affidavit, it would be difficult, if not impossible, for him to escape his own admission that this was "a freak accident that could not have been avoided, and that there was nothing more that could have been done." Kurpiel has not pointed to any evidence, lay or expert, that establishes that ice creepers were required or that their use would have prevented the accident. See *Rutherford v. Lake Michigan Contractors, Inc.*, 28 Fed. Appx. 395, 400 (6th Cir. 2002) (affirming summary judgment for plaintiff who was injured while performing his ordinary job duties because a plaintiff "under the Jones Act must produce some evidence of negligence" and plaintiff "presented no evidence that this was anything more than an unfortunate injury suffered during the execution of a frequent, routine duty of a deckhand"). During his deposition, Kurpiel testified that he never complained, prior to his injury, about the conditions on the boat and that his actions, as well as the other crewmember's actions, with respect to the condition of the boat were reasonable. While his testimony that the stairs had not been shoveled or salted is inconsistent with his prior sworn

7

statement, his deposition testimony that his actions were reasonable is not surprising, since he confirmed during this deposition that it was the responsibility of the deckhand to shovel and salt the deck and stairs, that the accident occurred four hours into his shift (when he would have been the deckhand responsible for shoveling and salting the deck and stairs), and that he had been asleep in the wheelhouse during his shift.

Given that Kurpiel's statements in his affidavit are in conflict with both his earlier sworn deposition testimony and his signed, post-accident statement, Plaintiff has failed to direct this Court to a single source of factual evidence to support his negligence claim. Instead, the evidence suggests that ice creepers were available for use if crewmembers deemed their use necessary. Moreover, it was clear from Kurpiel's own testimony, as well as the testimony of other crewmembers, that deckhands were responsible for keeping the stairs and deck free of snow and ice and that during his shift, when he at least arguably should have been shoveling and salting, he had fallen asleep. There is no genuine issue of material fact with respect to his claims for negligence or unseaworthiness, and Defendant Calumet is entitled to summary judgment.[1]

---

[1] In his opposition to Defendant's motion for summary judgment, Plaintiff relies solely on his argument that he was not aware of nor issued ice creepers. He does not argue that the *John M. Selvick* was unseaworthy. However, because he alleged in his complaint that the vessel was unseaworthy, for the sake of completeness, the Court briefly addresses this issue. The standard for seaworthiness is not that a vessel must be perfect, but rather that it must be reasonably fit for the vessel's intended service. See *Hughes v. ContiCarriers and Terminals, Inc.*, 6 F.3d 1195, 1197 (7th Cir. 1993); see also *Mahnich v. Southern S.S. Co.*, 321 U.S. 96 (1944). To recover damages under a theory of unseaworthiness, a seaman must show that an unsafe condition on the vessel caused his injury. *Hughes*, 6 F.3d at 1197. Plaintiff intimated in his deposition that if non-skid paint had been applied to the steps, he would not have fallen. However, in Plaintiff's post-accident statement, he admitted that all six steps had non-skid paint on them. Then, in response to Defendant's statement of facts, Plaintiff also admitted that the steps had non-skid paint, but that it was worn out. Despite Plaintiff's inconsistent statements, the evidence of record indicates that Calumet did apply anti-skid paint and that it was in a satisfactory condition at the time of Plaintiff's accident. The records attached to Calumet's general manager's affidavit indicate that during inspections on July 11, 2007 and May 7, 2008 (these dates bracket the date of the accident), the anti-skid paint applied to the vessel was determined to be in satisfactory condition. Calumet has demonstrated through both a sworn affidavit and documents that the anti-skid paint (which was not mandatory under Coast Guard regulations) was, in fact, applied and in satisfactory condition at the time of Kurpiel's accident. See also *American River Transportation Co. v. Phelps*, 189 F. Supp. 2d 835, 852 (finding that custom and

**III.    Conclusion**

For these reasons, the Court grants Defendant Calumet River Fleeting, Inc.'s motion for summary judgment [26]. Judgment will be entered in favor of Defendant Calumet and against Plaintiff Brett Kurpiel on all claims.

Dated:  February 17, 2010

　　　　　　　　　　　　　　　　　　　　　　　　　　　　
Robert M. Dow, Jr.
United States District Judge

---

practice showed that non-skid paint was not required and, accordingly, the failure to apply non-skid paint to the deck of a barge did not constitute negligence nor render the barge unseaworthy).